Mark Mahon
movieman1000@live.com
Mariners Rest, Mariners View Avenue,
Passage West,
Cork,
Ireland
Telephone: 353 87 742 4444

*Plaintiff Pro Se*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MARK MAHON, an individual,<br>Plaintiff,<br>v.<br>MAINSAIL LLC., ET AL.,<br>Defendants. | CASE NO. 4:20-cv-01523-YGR<br>**STATEMENT** |
| MARK MAHON, an individual,<br>Plaintiff,<br>v.<br>YOUTUBE LLC., ET AL.,<br>Defendants. | CASE NO. 4:20-cv-01525-YGR |
| MARK MAHON, an individual,<br>Plaintiff,<br>v.<br>ENTERTAINMENT ONE US LP, ET AL.,<br>Defendants. | CASE NO. 4:20-cv-01527-YGR<br><br>Judge: Hon. Yvonne Gonzalez Rogers |

MARK MAHON, an individual,

Plaintiff,

v.

ALPHABET INC., ET AL.,

Defendants.

CASE NO. 4:20-cv-01530-YGR

MARK MAHON, an individual,

Plaintiff,

v.

APPLE, INC., ET AL.,

Defendants.

CASE NO. 4:20-cv-01535-YGR

Judge: Hon. Yvonne Gonzalez Rogers

**STATEMENT**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

Per Hon. Yvonne Gonzalez Rogers' Order of April 22, 2020, Plaintiff has prepared the following statement regarding whether the above-captioned cases should be consolidated partially for discovery only or for all purposes.

In the interests of efficiency, Plaintiff agrees that the cases should be consolidated partially for discovery only but as the legal copyright owner of STRENGTH AND HONOUR (the "Motion Picture") Plaintiff believes that this is where the consolidation also has to end.

Through his company, Maron Pictures Ltd. ("MPL") and himself, Plaintiff has been in a legal battle for nearly ten years against Defendants *Mainsail LLC et. al.* who have caused the crux of the problem that now all parties have to contend with. This problem may also have been aided by poor judiciary judgments on the way, but if one thing has remained steadfast throughout it is "whatever is true can never be made false and whatever is false can never be made true" and this is where the power of Copyright holds true.

Despite Plaintiff revoking all rights from his company, Maron Pictures, to his Motion Picture on October 1, 2015 due to nonpayment, because MPL was never paid and in turn, MPL could not pay him, once the decision of the Los Angeles Superior Court was ruled on in December 9, 2016, MPL appealed the matter to the Second Appellate District, Court of Appeal. The Court of Appeal then subsequently affirmed the Los Angeles Superior Court's decision despite their own findings that there "was not clear error on the face of the record for the court to find nondelivery" on February 15, 2019. However, despite there being no onus on MPL at that point, at great expense MPL still took the matter to the Supreme Court in the interest of protecting the parties who now have to deal with the fallout of previous happenings and indeed, to show that MPL did everything within its power to stop what it deems as an obvious wrong.

However, Plaintiff also believes that this case cannot be consolidated any further than discovery because it goes against Federal Copyright Law, 17 U.S.C. §§ 101 *et. seq.* Furthermore, Infringement of copyright, which is legislated for under 17 U.S.C. § 501(a) provides:

> (a) Anyone who violates any of the exclusive rights of the copyright owner as provided by sections 106 through 122 or of the author as provided in section 106A(a), or who imports copies or phonorecords into the United States in violation of section 602, is an infringer of the copyright or right of the author, as the case may be. For purposes of this chapter (other than section 506), any reference to copyright shall be deemed to include the rights conferred by section 106A(a). As used in this subsection, the term "anyone" includes any State, any instrumentality of a State, and any officer or employee of a State or instrumentality of a State acting in his or her official capacity. Any State, and any such instrumentality, officer, or employee, shall be subject to the provisions of this title in the same manner and to the same extent as any nongovernmental entity.

While Plaintiff understands that Defendants may have contractual relations with each other, there is no business relationship between Plaintiff and the parties, as indeed, Plaintiff was made well aware on the numerous occasions when Plaintiff sought information about his Copyright protected Motion Picture and received nothing other than being told by parties that there was no relationship with Plaintiff "contractually or otherwise."

Plaintiff appreciates too that Defendants may represent strong business interests and it would suit them to have matters consolidated further, but Plaintiff also represents every other Copyright owner out there, and believes that if matters are consolidated further than discovery

that it could create a very dangerous precedent where Copyright owners' rights could be reduced further by large business knowing that if similar cases were to happen in future that they will be protected by consolidation, when 17 U.S.C. §§ 101 *et. seq.* is designed to stop these things from happening in the first place.

Further, 17 U.S.C. §§ 101 *et. seq.* or indeed, 17 U.S.C. § 501 also does not provide that if a group of independent legal entities who have contractual relations with each other, infringe any of the exclusive rights of a copyright owner through intentional deception or accidental ignorance by way of one of the groups' agreements, then that group may consolidate for a liability point of view. Plaintiff respectfully submits that if Congress had indeed wanted this to happen, it would have legislated for it accordingly. Instead Congress codified that "**Anyone** who violates any of the exclusive rights of the copyright owner as provided by sections 106 through 122 or of the author as provided in section 106A(a) … is an infringer of the copyright or right of the author, as the case may be. For purposes of this chapter (other than section 506), any reference to copyright shall be deemed to include the rights conferred by section 106A(a)." (emphasis added.) 17 U.S.C. § 501(a). The same code also took it a step further by even clarifying that "the term "anyone" includes any State, any instrumentality of a State, and any officer or employee of a State or instrumentality of a State acting in his or her official capacity. Any State, and any such instrumentality, officer, or employee, shall be subject to the provisions of this title in the same manner and to the same extent as any nongovernmental entity." § 501(a). In other words, if anyone, even including the State violates any of the exclusive rights of the copyright owner as provided by sections 106 through 122 or of the author as provided in section 106A(a), then they shall be held individually accountable.

The other reason why Plaintiff initially wanted the cases to proceed separately under different Judges too, is because there is a claim listed on all cases, which is "Infringement of Right of the Author."

Article I, section 8, clause 8, of the Constitution states: "The Congress shall have Power . . . To promote the Progress of Science and useful Arts by securing for limited Times to Authors . . . the exclusive Right to their . . . Writings. . . ." As is clear from its text, that clause of

the Constitution grants no substantive protections to authors. Rather, Congress is empowered to provide copyright protection.

Copyright, therefore, is a creature of statute, and the only rights that exist under copyright law are those granted by statute. As the Supreme Court wrote 170 years ago:

> This right [in copyright] . . . does not exist at common law-it originated, if at all, under the acts of congress. No one can deny that when the legislature are about to vest an exclusive right in an author or an inventor, they have the power to prescribe the conditions on which such right shall be enjoyed. . . .

*Wheaton v. Peters*, 33 U.S. (8 Pet.) 591, 663-64, 8 L.Ed. 1055 (1834); *see also Stewart v. Abend*, 495 U.S. 207, 251, 110 S.Ct. 1750, 109 L.Ed.2d 184 (1990) (Stevens, J., dissenting) (stating that copyright is statutorily created); *M. Kramer Mfg. Co. v. Andrews,* 783 F.2d 421, 432 (4th Cir. 1986) ("The right of copyright is a creature of federal statute, with its constitutional base in Article I, § 8, cl. 8."); *Russell v. Price*, 612 F.2d 1123, 1129 n. 17 (9th Cir. 1979) ("Common-law copyright is no longer recognized under the [1976] Act. . . ."); *Microsoft Corp. v. Grey Computer*, 910 F.Supp. 1077, 1084 (D.Md. 1995) ("Unlike contracts, copyrights and the rights flowing therefrom are entirely creatures of statute. . . ."). Accordingly, our starting point is the statute.

To enhance this ideal, H.R. 4262 was introduced on March 28, 1988 at the 100th Congress, 1987-1988. It was a bill to amend title 17, United States Code, to implement the Berne Convention for the Protection of Literary and Artistic Works, which was first accepted in Berne, Switzerland in 1886, as revised at Paris on July 24, 1971. Usually known as the Berne Convention, it is an international agreement governing copyright. The bill named the "Berne Convention Implementation Act of 1988" was enacted by Congress and signed into law by President Ronald Reagan on October 31, 1988.

The bill provides under Sec 3 as follows:

> (a) Relationship with Domestic Law.—The provisions of the Berne Convention—
>
> (1) shall be given effect under title 17, as amended by this Act, and any other relevant provision of Federal or State law, including the common law; and

(2) shall not be enforceable in any action brought pursuant to the provisions of the Berne Convention itself.

(b) Certain Right Not Affected. – The provisions of the Berne Convention, the adherence of the United States thereto, and satisfaction of United States obligations thereunder, do not expand or reduce any right of an author of a work, whether claimed under Federal, State, or the common law-

(1) To claim authorship of the work; or

(2) To object to any distortion, mutilation, or other modification of, or other derogatory action in relation to, the work, that would prejudice the author's honor or reputation.

As noted by Steven Spielberg at the 100th hearings at Congress. "The Berne Treaty, Mr. Chairman, gives voice to this idea that art and the artist are not commodities to be treated like sausage. The Berne treaty gives to the artist a specific standing to object to a defacement of his or her work, and it recognizes moral rights as distinct from economic rights." *See Hearings, 100th Cong*., supra note 4, at 479-546 (statements of George Lucas and Steven Spielberg). 118. Id. at 502 (statement of Steven Spielberg).

Turning to 17 U.S.C. § 102, Subject matter of copyright. It provides, in part:

(a) Copyright protection subsists, in accordance with this title, in ***original works of authorship fixed in any tangible medium of expression***, now known or later developed, from which they can be perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine or device. ***Works of authorship*** include the following categories: (emphasis added)

(1) literary works;
(2) musical works, including any accompanying words;
(3) dramatic works, including any accompanying music;
(4) pantomimes and choreographic works;
(5) pictorial, graphic, and sculptural works;
(6) motion pictures and other audiovisual works;
(7) sound recordings; and
(8) architectural works.

17 U.S. Code § 106. Exclusive rights in copyrighted works. It provides:

Subject to sections 107 through 122, the owner of copyright under this title has the exclusive rights to do and to authorize any of the following:

(1) to reproduce the copyrighted work in copies or phonorecords;

(2) to prepare derivative works based upon the copyrighted work;

(3) to distribute copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending;

(4) in the case of literary, musical, dramatic, and choreographic works, pantomimes, and motion pictures and other audiovisual works, to perform the copyrighted work publicly;

(5) in the case of literary, musical, dramatic, and choreographic works, pantomimes, and pictorial, graphic, or sculptural works, including the individual images of a motion picture or other audiovisual work, to display the copyrighted work publicly; and

(6) in the case of sound recordings, to perform the copyrighted work publicly by means of a digital audio transmission.

17 U.S. Code § 106A. Rights of certain authors to attribution and integrity. It provides, in part:

(3) subject to the limitations set forth in section 113(d) [1], shall have the right—

(A) to prevent any intentional distortion, mutilation, or other modification of that work which would be prejudicial to his or her honor or reputation, and any intentional distortion, mutilation, or modification of that work is a violation of that right, and

(B) to prevent any destruction of a work of recognized stature, and any intentional or grossly negligent destruction of that work is a violation of that right.

Pursuant to 17 U.S.C. § 102, "***Works of authorship***" include "(1) literary works … (6) motion pictures and other audiovisual works." Turning back to Sec 3(a)(1) of the 'Berne Convention Implementation Act of 1988' provides [the Berne Convention] "shall be given effect under title 17, as amended by this Act, and any other relevant provisions of Federal or State law, including common law". In other words, violations have to be executed generally under title 17. While Plaintiff accepts that he can claim copyright infringement under 17 U.S.C. § 106(5) for violation of "the individual images of a motion picture … [and] display[ing] the copyrighted work publicly" which violate his copyright and protects Plaintiff against Defendants for infringing the images on the illicit and unauthorized covers they all used, this still does not give Plaintiff his legal entitlement to protection in accordance with an international copyright treaty of which the United States is a signatory, namely the Berne Convention for the Protection of Literary and Artistic Works. Further, it is legislated for Plaintiff to receive "prevent[ing] any intentional distortion, mutilation, or other modification of that work which would be prejudicial to his or her honor or reputation, and any intentional distortion, mutilation, or modification of that work is a violation of that right" and "prevent[ing] any destruction of a work of recognized

[1] 17 U.S.C. 113 provides for 'Scope of exclusive rights in pictorial, graphic, and sculptural works.'

stature, and any intentional or grossly negligent destruction of that work is a violation of that right." Plaintiff respectfully submits that the only way that he can seek this relief under title 17 for these rights is pursuant to 17 U.S.C. §§ 106A(a)(3)(A) and 106A(a)(3)(B). Plaintiff also respectfully submits that this is the reason why 17 U.S.C. § 501 which addresses "Infringement of copyright" provides at § 501 (a): [2]

> "Anyone who violates any of the exclusive rights of the copyright owner as provided by sections 106 through 122 or of the author as provided in section 106A(a) … is an infringer of the copyright or right of the author, as the case may be. For purposes of this chapter (other than section 506), any reference to copyright shall be deemed to include the rights conferred by section 106A(a)."

Separately, Sec 3(b) of the 'Berne Convention Implementation Act of 1988' provides for "Certain Rights Not Affected" and states specifically under 3(b)(2) "to object to any distortion, mutilation, or other modification of, or other derogatory action in relation to, the work, that would prejudice the author's honor or reputation."

Put differently, if Plaintiff cannot get the relief he requires as allowed for under title 17, and as separately provided for by Sec 3(a) of the 'Berne Convention Implementation Act of 1988,' then Plaintiff respectfully submits that all Defendants have violated an international copyright Treaty of the United States, as enacted by Congress in 1988 and indeed, violated the Berne Convention for the Protection of Literary and Artistic Works (1886), as the illicit covers and unauthorized copies were created in the State of California. Furthermore, there can be no denying that a motion picture that received two Irish Film and Television Academy award nominations, was nominated for over thirty (32) awards all over the globe, won over twenty (20) separate awards in film festivals all over the world, hosted to a Royal screening by His Serene Highness, Prince Albert, Sovereign Prince of Monaco at the Palace of Monaco, and invited on the TODAY show in New York to discuss the Motion Picture was "distort[ed], mutilate[ed], or… modif[ied]… in relation to, that work, that [did] prejudice the author's honor or reputation." (Sec 3(b)(2) of the ***Berne Convention Implementation Act of 1988***.)

Further, Plaintiff submits that all Defendants, other than *Mainsail LLC et al.* and

[2] "STRENGTH AND HONOUR" as a "literary work" is also an award-winning screenplay, which is infringed too.

*Entertainment One et al.* who caused the problem to begin with, had a duty of care to do proper due diligence that could have "prevent[ed] [further] destruction of a work of recognized stature, [as] any intentional or grossly negligent destruction of that work is a violation of that right."

However, while Plaintiff also understands that there is no precedent in case law to support his theory for "Infringement of Right of the Author," this was the reason why Plaintiff sought different judges on the separate cases, but this still does not reduce each legitimate claim, separate federal questions raised or relief that Plaintiff seeks.

Further, "it is virtually axiomatic that the public interest can only be served by upholding copyright protections and correspondingly, preventing the misappropriation of skills, creative energies and resources which are invested in the protected work." *Warner Bros. Entm't, Inc. v. WTV Sys.*, 824 F.Supp.2d 1003, 1015 (C.D. Cal. 2011); see also *Disney Enters., Inc. v. VidAngel, Inc.*, 224 F. Supp. 3d 957 (C.D. Cal. 2016).

Having relayed all of the above, there are a number of motions currently before the court and once those motions have been evaluated by the court, if a consolidation proposal is suggested from prospective parties in a genuine effort to resolving all issues before the court, then obviously that is something that Plaintiff is open to hearing but is still reserving all rights. However, if matters are proceeding to trial, then in the interest of justice and of maintaining the integrity of Federal Copyright Laws 17 U.S.C. §§ 101 *et. seq.*, other than a partial consolidation for discovery, Plaintiff respectfully submits that each action has to move forward separately.

Dated: April 28, 2020

Respectfully submitted,

By: ____________________

Mark Mahon
movieman1000@live.com
Mariners Rest, Mariners View Avenue,
Passage West,
Cork,
Ireland
Telephone: 353 87 742 4444
*Plaintiff Pro Se*